CROUCH v. CHARLESTON & SAVANNAH RAILWAY COMPANY.

1. Contributory negligence is a matter of defence, and the burden of proving it is on defendant. It is not necessary, therefore, that the plaintiff should allege in his complaint that he exercised due care.
2. Knowledge that there are defects in a draw to a bridge does not relieve the owners of the bridge from all responsibility. And so, where a steamer had several times passed through such a draw without injury, but on one occasion was injured while passing through with proper care, in action for damages for such injury, the judge properly refused a non-suit.
3. The failure of the steamer to "drop anchor and drag through," as is required of boats, &c., passing *under a bridge* (*Gen. Stat.*, § 1115) does not affect this case.

Before WITHERSPOON, J., Charleston, November, 1883.

Action by H. W. Crouch and others against the Charleston and Savannah Railway Company. The opinion states the case.

*Messrs. Brawley & Barnwell*, for appellants, cited 11 *East*, 60; 88 *Mass.*, 39; 1 *Abb. Forms*, 444, 446; *Wood Nuis.*, § 703; *Ang. Water Cour.*, § 567; 2 *Bland*, 2; 2 *Cart.*, 586; 66 *Mass.*, 488; 36 *Vt.*, 580; *Thomp. Neg.*, 1203–7; 119 *Mass.*, 564; *Wood Nuis.*, §§ 73, 846, 864; 71 *N. C.*, 311; 9 *N. Y.*, 456; *Gen. Stat.*, § 1115.

*Messrs. Lord & Inglesby*, contra.

October 6, 1884. The opinion of the court was delivered by
MR. JUSTICE McGOWAN. The plaintiffs are the owners of the steamer "Silver Star." The defendant is a chartered corporation, with the power to conduct their railroad across any river, creek, waters, or water courses that may be in their route from Charleston to Savannah, provided that the navigation of the stream be not obstructed thereby. Under the charter a bridge was constructed across the Ashley River, a navigable stream.

The complaint alleged that the defendant, since June 7, 1880, has unlawfully kept and continued the said bridge across the Ashley, with an improperly constructed draw therein, and has

thereby obstructed and continued to obstruct the navigation of
said river. That on September 27, 1882, while the steamer of
the plaintiffs was proceeding upon the said river, she struck upon
and against the said bridge, and thereby received injury to the
amount of two thousand dollars. The answer of defendant de-
nied each and every allegation of the complaint not specifically
admitted, but admitted it to be true that on the day named, Sep-
tember 27, 1882, the plaintiffs' steamer, known as the "Silver
Star," did receive certain injuries in passing the said bridge, but
insisted that the same was caused by the negligence and want of
care of the persons in charge of the steamer, in not taking the
proper precaution while passing the bridge.

At the trial the defendant corporation demurred orally that
the complaint did not state facts sufficient to constitute a cause of
action, which demurrer was overruled and the trial proceeded
with. The testimony submitted by the plaintiffs tended to show,
that the draw was not properly constructed, or of sufficient width
to enable vessels to pass through in safety; that the injury oc-
curred in the afternoon of a fair day, and that, in attempting to
make the passage, every possible precaution was taken by the
officers of the boat to avoid accident. There was no testimony
offered to rebut this proof, but the defendant seemed to rely upon
the general proposition that the improper construction of the
draw was apparent, and being known to the officers of the boat,
the effort to pass through should not have been made, and to do
so amounted to want of proper care or negligence upon their part.
It appears that the steamer "Silver Star" had, in pursuing her
business, frequently passed through this draw-bridge without
injury, and that complaints had been made to the defendant of
the improper construction and narrowness of the draw.

The defendant moved for a non-suit which was refused, and the
jury rendered a verdict for the plaintiffs for $1,158.

The defendant appeals to this court, I. From the ruling of the
judge, in refusing to sustain the demurrer and dismiss the com-
plaint, upon the grounds, 1. "Because the complaint does not
state that the plaintiffs were in the exercise of ordinary care in
passing defendant's bridge. 2. Because it does not state facts,
from which it might be inferred that the plaintiffs were in the ex-

ercise of ordinary care in so passing the bridge." II. The defendant also appeals from the order of the judge refusing a motion for non-suit on these grounds, 1. "That plaintiffs' testimony shewed that in passing said bridge they were doing what prudent men would not attempt under similar circumstances, and were therefore not in the exercise of ordinary care. 2. Because plaintiffs' testimony showed that they did not drop anchor and drag through defendant's bridge as required by law," &c.

First, as to the demurrer. It is true that in actions like this for damages on account of alleged negligence, great consideration is given to the question of contributory negligence on the part of the plaintiff. In a majority of the cases probably, the conduct of the plaintiff is interposed in answer to the charge of negligence on the part of the defendant; but the better view seems to be, that the conduct of the plaintiff is not a necessary element in his cause of action and to be alleged by him; but a defence to be alleged and proved by the defendant. In pleadings under the code, great clearness and simplicity are required, surplusage being regarded as a vice. The complaint must only state "the facts which are the occasion for the primary right and duty to arise, and those which form the breach of such right and duty, to the entire exclusion of the other elements that enter into the cause of action, the legal rules, and the legal rights of the parties," &c. *Pom. Rem.*, § 524.

This court has held in the recent case of *Carter* v. *C. & G. R. R. Company*, 19 *S. C.*, 28, that contributory negligence is a matter of defence and the burden of proving it is with the defendant. We think it follows from the onus of proof being on the defendant, that it is not necessary for the plaintiff to make the allegation of due care in his complaint, and thus anticipate the defence. "Where contributory negligence is mere matter of defence, a complaint or declaration will not be held bad solely because it omits an allegation that the plaintiff or person injured was without fault. * * * It is not necessary for the plaintiff to aver due care on his part, in order to introduce proof of it." 2 *Thomp. Neg.*, 1178, in the notes. We think there was no error on the part of the Circuit judge in refusing to sustain the demurrer.

Second, as to the non-suit. Assuming that it was incumbent

32

upon the defendant to make out a case of want of proper care on the part of the plaintiffs, we think that the testimony on the subject tended to show that all possible care was taken in passing the draw; at least that it was quite sufficient to require the judge to submit the question to the jury. Indeed, proper care of the officers *in passing* the draw does not seem to have been questioned, but the general ground was taken that the defects of the bridge were so obvious, and so well known to the officers of the steamer, that the effort, under the circumstances, *to pass at all*, was itself clear proof of want of proper care upon their part—so clear that the judge upon that ground should have ordered a nonsuit. We cannot accept the view that the knowledge of the defects on the part of the officers, should relieve the defendant from all responsibility. Such knowledge was entitled to proper consideration, but to make it conclusive against the injured party, would be to give primary importance to a secondary consideration, and to absolve the wrong-doer for the very reason that his wrong was so great and apparent that it was known by all. The greater the obstruction, the more certain immunity from its consequences! that is to say, to give the obstructor advantage of his own wrong.

It is true that no one is justified in wantonly throwing himself against an obvious and impassable obstruction, and such conduct clearly proved would prevent a recovery for an injury thereby produced; but we do not see that such failure could cure the original wrong of the obstructor. Besides, in this case, experience had shown that it was possible to pass through the defective draw without injury, as the "Silver Star" had done many times before. The plaintiffs were engaged in business, which made it necessary to navigate the Ashley River. They had a right to do so unobstructed, and the defendant corporation had no right to place such obstructions across the river as required them, for fear of injuries, to give up the navigation and their business. The doctrine contended for would certainly put the navigation of the river at the mercy of the defendant corporation.

We think the proper doctrine on the subject was announced in a late Maryland case, *County Commissioners of Prince George* v. *Burgess,* (*Md.*) 17 *Reporter,* 245, February, 1884, in which

Judge Irving, in delivering the judgment of the court, said: "It is well settled in this state that the burden of showing contributory negligence on the part of a plaintiff, is on the defendant. *Bacon's Case*, 58 *Md.*, 484. This rule has been laid down in suits against railroads for injuries occasioned by them; and we see no reason for establishing a different rule as applied to accidents occasioned by defective county roads and bridges. The presumption that a man will act prudently and with care for his own safety, and will not recklessly rush into destruction, must exist as well in one case as in the other. In this case it is argued that because the evidence showed that the plaintiff knew of the condition of the bridge, therefore the burden shifted, and it was incumbent on him to show affirmatively that he used due care and prudence in driving. It is wise for a plaintiff shown to know of a defect, to prove that he drove with caution (that was shown in this case); but we cannot accede to the view that the *onus* of showing want of care rests any where but on the defendant. If the bridge was wholly impassable and the plaintiff knew it, his knowledge would be conclusive, and the case might have been taken from the jury. In this case it does not appear from the proof that the bridge was wholly impassable. It was unsafe and had a hole in it, into which appellant's horse fell and was injured. The simple fact of its existence, with the knowledge of the plaintiff, was not sufficient to bar recovery. The hole might possibly have been avoided with ordinary care in driving, and the knowledge of its existence, ought to have prevented carelessness on the part of the plaintiff, and naturally would have induced care on his part; but the *onus* of showing that such care and prudence were not exercised still rested on the defendants. The case of *Reed* v. *Northfield*, 13 *Pick.*, 94, is very similar to this case. There was a dangerous hole by the side and edge of the bridge, of which the plaintiff had knowledge. He crossed the bridge and in doing so his horse got into the hole and was seriously injured. The jury was instructed that the knowledge of the hole being there was not conclusive evidence of negligence. On appeal Chief Justice Shaw, pronouncing the decision of the court, said that the ruling was perfectly correct. See *Horton* v. *Ipswich*, 12 *Cush.*, 492, &c. The doctrine to be

extracted from all these cases is, that if the defect in a road or bridge be such as to make the same *practically impassable*, a person takes all the hazard who, with such knowledge, attempts to pass over the road or bridge, and will not be redressed if he is injured. But if the defect be one which does not render the road wholly unfit for use, or bridge substantially impassable, and is only a defect which might result injuriously if not shunned, in such case it cannot be that a citizen with business must remain at home and may not make any attempt to use the road or bridge as his necessity requires," &c.

Section 1115 of the General Statutes, under the head of "Bridges," provides that "All vessels, boats, and rafts passing under any bridge shall, before they come to the same, drop anchor and drag through under the same; and if any vessel, boat, or raft shall pass, or attempt to pass, under any bridge without dragging as aforesaid, every such vessel, boat, or raft shall forfeit the sum of fifty dollars, to be recovered by immediate seizure and detention of the said vessel, boat, or raft, until the payment of the said sum, by information being given of the same to the Circuit Court in the county where the offence was committed; the money, when so recovered, to be applied for rebuilding or keeping in repair such bridge," &c. This is not a proceeding to recover the penalty imposed by this section, which we do not think has any application to the case. This is a private bridge with a draw to it defectively constructed. The difficulty was not in getting *under* the bridge, but *through* it. There was no evidence that in passing the draw, it was customary, or would have been attended with less danger to the vessel, to "drop anchor and drag through."

The judgment of this court is that the judgment of the Circuit Court be affirmed.